IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

BOARD OF REGENTS OF THE
UNIVERSITY OF WISCONSIN SYSTEM
1860 Van Hise Hall
1220 Linden Drive
Madison, WI 53706,

       Plaintiff,

           Case No. 07 C 0665 C

  v.

PHOENIX SOFTWARE INTERNATIONAL, INC.
5200 West Century Blvd., Suite 800
Los Angeles, CA 90045-5967,

       Defendant.

## COMPLAINT

Plaintiff, Board of Regents of the University of Wisconsin System, brings this complaint appealing the Trademark Trial and Appeal Board's Decision in Cancellation Proceeding No. 92042881 and further seeks declaratory and injunctive relief against Defendant, Phoenix Software International Inc., and alleges as follows:

### PARTIES

1.     Plaintiff Board of Regents of the University of Wisconsin System ("plaintiff") is an institution of higher education and an agency of the State of Wisconsin, established by Wis. Stat. ch. 36, with a principal place of business at 1860 Van Hise Hall, 1220 Linden Drive, in the City of Madison, Dane County, Wisconsin 53706.

2.      Upon information and belief, defendant Phoenix Software International, Inc., c/o CT Corporation as Registered Agent ("defendant"), is a California corporation registered in Wisconsin as a foreign for-profit corporation, having a principal place of business at 5200 West Century Boulevard, Suite 800, Los Angeles, California 90045-5967.

## JURISDICTION

3.      This action arises under the Trademark Laws of the United States, 15 U.S.C. § 1051, et seq.

4.      This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

5.      This Court also has supplemental jurisdiction over any related state and common law claims pursuant to 28 U.S.C. § 1367(a).

6.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391.

## NATURE OF ACTION

7.      This appeal is specifically authorized by section 21(b) of the Trademark Act of 1946, 15 U.S.C. § 1071(b).

8.      Plaintiff adopted the mark "Condor" for certain computer network operating system software. This trademark was first used by plaintiff on or about February 1, 1988, and was first used in commerce on or about June 1, 1988.

9.      Plaintiff applied for federal trademark registration in the mark Condor on March 29, 1999. The application was duly published for opposition in the Official Gazette on December 19, 2000. Defendant did not oppose plaintiff's application.

10.     On March 13, 2001, Registration No. 2,434,630 for the mark Condor was issued to plaintiff for goods identified as "computer network operating system software, downloadable

from a global computer network, that delivers large amounts of computational power by utilizing idle computing resources in a network of individual computer workstations in class 9."

     11.     Defendant claims ownership of Registration No. 2,028,364 for the mark Condor, for goods identified as "computer software for on-line programming development, library management and system utilities functioning on mainframe systems." Registration No. 2,028,364 was issued to defendant on January 7, 1997, alleging dates of first use of June 1, 1978, and first used in commerce of October 18, 1979.

     12.     On January 6, 2004, defendant filed a petition to cancel plaintiff's registration for the mark Condor. The cancellation proceeding is identified as Cancellation No. 92042881.

     13.     On September 26, 2007, the Trademark Trial and Appeal Board granted defendant's petition to cancel plaintiff's Registration No. 2,434,630. This decision of the Trademark Trial and Appeal Board (hereafter, "TTAB"), attached hereto, is the subject of this appeal.

     14.     This petition of appeal was filed on November 26, 2007, within the time allowed by 15 U.S.C. § 1071(b).

REASONS FOR APPEAL

     15.     Upon information and belief, the TTAB failed to properly apply the "preponderance of the evidence" standard for the defendant's burden of proof in assessing defendant's claims.

     16.     Upon information and belief, the TTAB failed to properly consider the differences in the description of the goods as set forth in the parties' respective trademark registrations in determining that the goods were sufficiently related such that source confusion was likely.

17.     Upon information and belief, the TTAB failed to consider plaintiff's substantial evidence and arguments that the features, functions, and uses of the respective goods are completely distinct and unrelated.

18.     Upon information and belief, the TTAB failed to apply the proper legal standard for determining whether the evidence in the record supported a finding that the goods were related.

19.     Upon information and belief, the TTAB failed to consider plaintiff's substantial evidence and arguments that the goods are used in unrelated fields.

20.     Upon information and belief, the TTAB improperly applied the holding of *Personnel Data Systems Inc. v. Parameter Driven Software Inc.*, 20 USPQ2d 1863 (TTAB 1991) in supporting its determination that there was no clear division between the parties' goods.

21.     Upon information and belief, the TTAB failed to properly consider plaintiff's substantial evidence that the purchasers of the parties' respective goods are entirely distinct.

22.     Upon information and belief, the TTAB applied an incorrect legal standard in determining the relevant purchasers of the parties' respective goods.

23.     Upon information and belief, the TTAB failed to adequately consider the sophistication of the purchasers of the parties' respective goods.

24.     Upon information and belief, the TTAB failed to consider plaintiff's substantial evidence that the parties' respective goods travel in distinct channels of trade.

25.     Upon information and belief, the TTAB applied an incorrect legal standard for determining the channels of trade for the parties' respective goods.

26.     Upon information and belief, the TTAB failed to give proper weight to the absence of evidence of actual confusion.

- 4 -

27.     Upon information and belief, the TTAB failed to apply the proper legal standard for determining when defendant was put on constructive notice of plaintiff's use of the mark Condor for purposes of the laches, estoppel and acquiescence defenses.

28.     Upon information and belief, the TTAB failed to consider the substantial evidence of the widespread and very public use by plaintiff of the Condor mark on its goods when considering the laches, estoppel and acquiescence defenses.

29.     Plaintiff seeks to introduce additional evidence of the multitude of other Condor marks for computer and software products that are used in commerce to show that defendant's rights to the mark are confined to a very narrow sphere.

30.     Plaintiff seeks to introduce additional evidence regarding the fundamental dissimilarity between the parties' respective goods in terms of use, function, channels of trade, and purchasers.

31.     Plaintiff seeks to introduce additional evidence of the harm that would be caused to plaintiff if the TTAB decision is not reversed.

32.     Plaintiff further seeks a *de novo* review of the TTAB decision coupled with a review of the further evidence and arguments noted above.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff respectfully requests a judgment against defendant as follows:

1.     A judgment reversing the findings of the TTAB cancellation proceeding, and confirming plaintiff's eligibility for trademark registration in the mark Condor.

2.      Grant plaintiff such other and further relief as is justified under the circumstances.

## JURY DEMAND

Plaintiff demands a jury trial in this action on any issue in this case so triable.

Dated this _26th_ day of November, 2007.

J.B. VAN HOLLEN
Attorney General

WILLIAM H. RAMSEY
Assistant Attorney General
State Bar #1031922

Attorneys for Plaintiff Board of Regents
of the University of Wisconsin System

Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 266-7477

ramseywh\phoenix software (trademark)\pl\phoenix complaint.doc

- 6 -

> THIS OPINION IS NOT
> A PRECEDENT OF THE
> TTAB

Mailed:
26 September 2007

## UNITED STATES PATENT AND TRADEMARK OFFICE

### Trademark Trial and Appeal Board

Phoenix Software International
v.
Board of Regents of the University of Wisconsin System

Cancellation No. 92042881

Rachel Blue of Doerner, Saunders, Daniel & Anderson, L.L.P. for Phoenix Software International.

Benjamin Griffiths, Esq. of the University of Wisconsin-Madison for the Board of Regents of the University of Wisconsin System.

Before Quinn, Walters, and Drost, Administrative Trademark Judges.

Opinion by Drost, Administrative Trademark Judge:

On March 13, 2001, Registration No. 2,434,630 for the mark CONDOR in typed or standard character form issued to the Board of Regents of the University of Wisconsin System (respondent) for goods identified as:

> computer network operating system software, downloadable from a global computer network, that delivers large amounts of computational power by utilizing idle computing resources in a network of individual computer workstations in class 9.

Cancellation No. 92042881

The underlying application was filed on March 29, 1999, and it claims a date of first use anywhere of February 1, 1988, and in commerce of June 1, 1988. The application was published for opposition on December 19, 2000.

On January 6, 2004, Phoenix Software International (petitioner) filed a petition to cancel respondent's registration on the ground that it had "adopted and continually used the mark CONDOR since at least as early as June of 1978 in connection with computer software for online programming development, library management, systems utilities functioning on mainframe systems in Class 9."[1] Petition to cancel at 1. Petitioner claimed ownership of Registration No. 2,028,364, which issued January 7, 1997, and it is based on an application filed on July 26, 1995, alleging dates of use of June 1, 1978 (anywhere) and October 18, 1979 (in commerce). The mark in the drawing is displayed in typed or standard character form. Petitioner alleged that if "the Registrant is permitted to retain the registration sought to cancelled… confusion in trade is likely to result. Petition to cancel, ¶ 3.

Respondent denied the salient allegations of the petition to cancel. In addition, respondent pled "in the

---

[1] The goods in petitioner's registration are identified as: "computer software for on-line programming development, library management and system utilities functioning on mainframe systems" in class 9.

Cancellation No. 92042881

alternative the affirmative defenses of laches, estoppel, and/or acquiescence.  It is inequitable to grant Petitioner's petition considering the significant amount of time that elapsed between the date on which Registrant's mark was published for opposition and the date on which Petitioner notified Registrant that it believed Registrant's goods infringed upon Petitioner's mark."  Answer at 3.[2]

The Record

The record consists of the following items:  the file of the involved registration; the trial testimony depositions with exhibits of petitioner's sole shareholder, Fred Hoschett, and its controller, Nicholas Miller, and respondent's University of Wisconsin witnesses, Miron Livny, Todd Tannenbaum, and Clark Jones, as well as respondent's notice of reliance on petitioner's responses to respondent's request for admissions and interrogatories, and petitioner's notice of reliance on status and title copies of its registration and respondent's.

Evidentiary Objections

Respondent has objected "to Petitioner's citation to 'Petitioner's Response to Registrant's Request for Admissions Nos. 18-24, attached as Exhibit E.'  Petitioner did not properly introduce these admissions according to 37 C.F.R. § 2.120(j)(5).  Since Petitioner did not file a

---

[2] Petitioner has not filed a reply brief in this case.

notice of reliance for these admissions, these admissions
were not made part of the record." Brief at 5 (citation to
record omitted). Petitioner has not responded to this
objection. However, we note that the pages attached to
petitioner's brief appear to correspond to papers attached
to respondent's notice of reliance dated July 20, 2006.
While respondent's notice of reliance indicated that it was
submitting Petitioner's Responses to Registrant's First Set
of Request for Admissions Nos. 6, 7, 8, 9, 11, 17, 26, 27,
31 and 37, it actually attached responses to requests Nos.
1–44. Inasmuch as respondent has submitted these admissions
in its notice of reliance, they are of record and we will
not sustain respondent's objection.

We will also not sustain respondent's objection based
on lack of foundation to petitioner's cross-examination of
respondent's witness. Respondent introduced internet search
results during its direct examination of its witness
(Exhibit 16). Petitioner simply asked respondent's witness
about the witness's understanding regarding the Wikipedia
entry that was one of the entries in the exhibit that
respondent had introduced earlier.

### Preliminary Matters

. We begin by addressing whether petitioner has standing
and whether it has shown a valid ground for cancellation.
*Young v. AGB Corp.*, 152 F.3d 1377, 47 USPQ2d 1752, 1754

Cancellation No. 92042881

(Fed. Cir. 1998) ("Section 14 has been interpreted as requiring a cancellation petitioner to show (1) that it possesses standing to challenge the continued presence on the register of the subject registration and (2) that there is a valid ground why the registrant is not entitled under law to maintain the registration") (internal quotation marks omitted).  In this case, petitioner has submitted evidence of its ownership of a prior registration for the identical term for computer software.  It has also alleged a likelihood of confusion between its mark and respondent's mark that is also registered for computer software. Therefore, petitioner has standing and it has shown that it has a valid ground for cancellation.

<u>Priority</u>

Next, we must determine whether petitioner or respondent has priority.  In a cancellation, petitioner does not necessarily have priority simply because it owns a registration.  *Brewski Beer Co. v. Brewski Brothers, Inc.*, 47 USPQ2d 1281, 1284 (TTAB 1998) (The "Board has taken the position, in essence, that the registrations of each party offset each other; that petitioner as a plaintiff, must, in the first instance, establish prior rights in the same or similar mark … Of course, petitioner or respondent may rely on its registration for the limited purpose of proving that its mark was in use as of the application filing

Cancellation No. 92042881

date"). In this case, petitioner's application for its registration was filed on July 26, 1995. Respondent has alleged that it has been distributing and licensing its mark CONDOR for its software continuously since 1988. Livny dep. at 25. However, petitioner has submitted evidence that it has been using its CONDOR mark for its software in commerce since at least 1979. *See* Hoschett dep. at 25. *See also* Hoschett dep. at 14 (Condor dep. at 14 ("Condor is the flagship or at least was the flagship of this company… I have customers that have been using the product since 1979 and they are still using it today"); Miller dep. at 20 ("I would say the CONDOR mark is probably at this state and municipality level… [s]ince 1978 … I believe the City of Glendale was one of our first customers") and Miller Ex. 3, letter without enclosures to Robert C..Garber dated July 15, 1981 ("Enclosed are copies of our first contract and associated invoice for the sale of the CONDOR system"). Even "oral testimony, if sufficiently probative, is normally satisfactory to establish priority of use in a trademark proceeding." *Powermatics, Inc. v. Globe Roofing Products Co.*, 341 F.2d 127, 144 USPQ 430, 432 (CCPA 1965) (emphasis added)  However, such testimony should "not be characterized by contradictions, inconsistencies and indefiniteness but should carry with it conviction of its accuracy and applicability." *B.R. Baker Co. v. Lebow Bros.*,

150 F.2d 580, 66 USPQ 232, 236 (CCPA 1945). We find that the evidence is sufficiently probative to establish petitioner's priority, which would date to at least 1979.

Background

Next, we look at petitioner's attempt to cancel respondent's registration for the mark CONDOR. Both parties use the same mark CONDOR on different types of software. The key issues in this case are whether there is a likelihood of confusion when the marks are used on these goods and whether petitioner's delay in bringing this proceeding has resulted in laches that prevents it from canceling respondent's mark.

Likelihood of Confusion

We begin by addressing the issue of whether there is a likelihood of confusion. The Federal Circuit precedent sets out thirteen factors to consider in these types of cases. *In re E. I. du Pont de Nemours & Co.*, 476 F.2d 1357, 177 USPQ 563, 567 (CCPA 1973); *Recot, Inc. v. Becton*, 214 F.3d 1322, 54 USPQ2d 1894, 1896 (Fed. Cir. 2000); and *Cunningham v. Laser Golf Corp.*, 222 F.3d 943, 55 USPQ2d 1842, 1844 (Fed. Cir. 2000).

The first factor we normally consider is a comparison of the marks. In this case, both marks are for the identical term CONDOR. Both marks are registered as typed or standard character marks. Therefore, there are no

Cancellation No. 92042881

differences between the marks.  This factor would support
petitioner's argument that there is a likelihood of
confusion.

The next factor is whether the goods of the parties are
related.  It is important to remember that in this
proceeding we must consider the goods as they are described
in the identifications of goods in the registrations.
*Octocom Systems, Inc. v. Houston Computers Services Inc.*,
918 F.2d 937, 16 USPQ2d 1783, 1787 (Fed. Cir. 1990) ("The
authority is legion that the question of registrability of
an applicant's mark must be decided on the basis of the
identification of goods set forth in the application
regardless of what the record may reveal as to the
particular nature of an applicant's goods, the particular
channels of trade or the class of purchasers to which the
sales of goods are directed").  *See also Paula Payne
Products v. Johnson Publishing Co.*, 473 F.2d 901, 177 USPQ
76, 77 (CCPA 1973) ("Trademark cases involving the issue of
likelihood of confusion must be decided on the basis of the
respective descriptions of goods") and *Cunningham*, 55 USPQ2d
at 1846 ("Accordingly, the identification of goods/services
statement in the registration, not the goods/services
actually used by the registrant, frames the issue").

In this case, the parties have spent considerable
efforts describing their goods and how the goods are

8

Cancellation No. 92042881

marketed.  To the extent that these facts provide some
information about the market and purchasers of these goods,
we have considered this information.  However, we have not
read limitations into the identified goods.

In addition, it "is not necessary that the goods and/or
services be similar or competitive, or even that they move
in the same channels of trade to support a holding of
likelihood of confusion."  *Hilson Research Inc. v. Society
for Human Resource Management*, 27 USPQ2d 1423, 1432 (TTAB
1993).

> [It] has often been said that goods or services need
> not be identical or even competitive in order to
> support a finding of likelihood of confusion.  Rather,
> it is enough that goods or services are related in some
> manner or that circumstances surrounding their
> marketing are such that they would be likely to be seen
> by the same persons under circumstances which could
> give rise, because of the marks used thereon, to a
> mistaken belief that they originate from or are in some
> way associated with the same producer or that there is
> an association between the producers of each parties'
> goods or services.

*In re Melville Corp.*, 18 USPQ2d 1386, 1388 (TTAB 1991).  *See
also Time Warner Entertainment Co. v. Jones*, 65 USPQ2d 1650,
1661 (TTAB 2002).

We start by noting that there is certainly no per se
rule that all computer products or even all computer
software are related.  *In re Quadram Corporation*, 228 USPQ
863, 865 (TTAB 1985) ("[W]e think that a per se rule
relating to source confusion vis-a-vis computer hardware
and software is simply too rigid and restrictive an approach

and fails to consider the realities of the marketplace").
*See also Information Resources Inc. v. X*Press Information
Services*, 6 USPQ2d 1034, 1038 (TTAB 1988).

Here, the goods are identified as different types of
computer software.

> Respondent:
> computer network operating system software,
> downloadable from a global computer network, that
> delivers large amounts of computational power by
> utilizing idle computing resources in a network of
> individual computer workstations

> Petitioner:
> computer software for on-line programming development,
> library management and system utilities functioning on
> mainframe systems

Respondent's goods involve using individual
workstations in a network to better utilize idle computing
resources.  Petitioner's software functions on a mainframe
system and it provides online programming development,
library management, and systems development.  While we do
not read limitations into the identification of goods, we
must consider those terms that do appear in the
identification of goods.  One of the differences between the
software is the fact that petitioner's software functions on
"mainframe systems" while respondent's goods are used in
connection with a "network of individual computer
workstations."  Respondent's witness (its mainframe
coordinator), when asked:  "would an organization that did
not have a mainframe or is not involved in developing

Cancellation No. 92042881

software application[s] for mainframe computers have any use
for Phoenix's Condor?", responded "Not that I can tell."
Jones dep. at 12.  *See also* Livny dep. at 40 (Respondent's
software creator stated that "none of the Condor users that
came back to us and asked us any question told us that it's
installed on a mainframe").

Petitioner, on the other hand, maintains that these
goods are very similar and used in the same environments.
Hoschett dep. at 52 ("So effectively we can run our
software, unchanged, unaltered on a workstation, on
someone's desktop, as if it were on a mainframe").  The
witness further stated:

> Q. Mr. Hoschett, platforms that PSI's Condor software
> can operate on, would that include a network of
> workstations?
>
> A. Yes, often happens.
>
> Q. What is a network of workstations, as you understand
> that term?
>
> A. Loosely defined it would be a LAN, WAN or some other
> network that allows the interconnection of these
> workstations.
>
> Q. PSI's Condor software, again, does operate in that
> environment?
>
> A. Yes.

Hoschett dep. at 52-53.  *See also* Hoschett dep. at 111 ("I
have many customers that use Condor that do not have
mainframes").

11

Cancellation No. 92042881

Mr. Hoschett also read a description of respondent's
software from respondent's website:

> A. "Condor is a specialized workload management system
> for computer-intensive jobs.  Like other full-featured
> batch systems, Condor provides a job queuing mechanism,
> scheduling policy, priority scheme, resource
> monitoring, and resource management.  Users submit
> their serial and parallel jobs to Condor.  Condor
> places them into a queue, chooses when and where to run
> the jobs based upon a policy, carefully monitors their
> progress, and ultimately informs the user upon
> completion."

> Q. Mr. Hoschett, does this language concern you?

> A. Very much so.

> Q. Would you explain why?

> A. When I first read this document a year or two years
> ago when it was presented to me, I remember it vividly,
> it made an emotional impact on me.  I was reading it in
> my home.  And I read the first paragraph, I saw the
> logo up at the top, even the picture, and I thought
> until I got about the second sentence of paragraph 2
> that it was our product.

Hoschett dep. at 72-73.

Petitioner describes its goods as "a toolbox of
functionality to be used essentially by anyone who uses a
computer to assist them in doing their jobs, whether it be
programming software, submitted batch jobs and queueing
batch jobs, or managing the environment or managing the
resources."  Hoschett dep. at 19.

Despite this testimony, respondent (Brief at 21) argues
that:

> Petitioner has not offered any evidence that these two
> Condor programs bear any clear relationship based on
> these common functions or that they could be

12

> encountered by the same person in a manner or under
> circumstances suggesting a common source. Accordingly,
> Petitioner's argument that the two programs are related
> because they possess the same functions is conclusory
> and merits no weight.

However, the question is not whether the products themselves
are different, as it is clear they are. The question is
whether they are sufficiently related that, if identified by
identical marks as is the case herein, confusion as to
source is likely. There is at least some evidence in the
record that the parties' respective software performs the
same general functions and the evidence does not demonstrate
the goods are used in distinctly different fields. While,
as we discussed above, there is no rule that software is
necessarily related, if software is used in different
fields, it is less likely to be related because the same
customers are not likely to encounter both marks. *See,
e.g., M2 Software Inc. v. M2 Communications Inc.*, 450 F.3d
1378, 78 USPQ2d 1944, 1947 (Fed. Cir. 2006) (Federal Circuit
affirmed board's determination that interactive multimedia
CD-ROMs in the fields of pharmacy and medicine was not
related to computer software featuring business management
applications for the film and music industries).

In this case, there is no clear division between the
parties' software that would cause us to conclude that these
products are not related. Instead, the main difference
appears to be that petitioner's goods are used in a

13

Cancellation No. 92042881

mainframe environment while respondent's goods are used in a
network of individual computer workstations. The board has
held that the distinction between software used on large or
small computers is not necessarily significant. *Personnel
Data Systems Inc. v. Parameter Driven Software Inc.*, 20
USPQ2d 1863, 1865 (TTAB 1991) ("We do not believe that the
likelihood of confusion would necessarily be precluded
simply because one party's programs may be intended for use
on one size computer and the other's programs may be used on
a different size computer"). *See also* Clark dep. at 66:

> Q. Does it stand to reason then, sir, your experience
> that software manufacturers, at least some software
> manufacturers would have an incentive to get into this
> area of operating in both environments?
>
> A.   There might be come incentive.   It's kind of costly
> and it depends on the market size.

Respondent maintains (Brief at 26) that "whether
Petitioner's software is running on a PC via a mainframe
emulator, or is running on a mainframe computer, is a
distinction without a difference. In either case, the
software is being used by mainframe programmers for
mainframe programming purposes." However, to the extent
that petitioner's and respondent's software can both be used
on workstations (even if not the same workstations), it is
more likely that the same consumers would encounter these
products.

Cancellation No. 92042881

    We add that while respondent's goods are identified as
being "downloadable from a global computer network," there
is nothing in petitioner's identification of goods that
would distinguish the parties' goods based on this fact.
Indeed, petitioner asserts that its software is actually
downloadable. Hoschett dep. at 23 ("Would that description
that we just read, 'downloadable from a global computer
network,' then apply just as well to PSI's Condor software?
A. Yes").

    Other factors that we take into consideration are the
sophistication of the purchasers and the care with which
purchases are made.  Purchasers of software for mainframe
systems and purchasers of software that delivers large
amounts of computational power by utilizing idle computing
resources in a network of individual computer workstations
would not be ordinary purchasers.  These purchasers would
have some level of skill and sophistication to the extent
that they are programming mainframe computers or networking
computer workstations to increase computational resources.
It also is apparent that these purchases would be made with
some care.  However, the fact that purchasers are careful
and sophisticated does not mean that confusion is not
likely.  *In re Total Quality Group Inc.*, 51 USPQ2d 1474,
1477 (TTAB 1999) ("[E]ven careful purchasers are not immune
from source confusion").  *See also In re Hester Industries,*

*Inc.*, 231 USPQ 881, 883 (TTAB 1986) ("While we do not doubt that these institutional purchasing agents are for the most part sophisticated buyers, even sophisticated purchasers are not immune from confusion as to source where, as here, substantially identical marks are applied to related products"). Here, even sophisticated purchasers who would be exposed to advertising for applicant's and registrant's software sold under the identical marks that could perform similar functions are likely to believe that there is some association or relationship between the sources of the software.

We also add that there is no evidence of actual confusion. Petitioner attempts to rebut respondent's contention that there is no actual confusion, but it merely refers to (1) internet searches for "Condor Software" that return hits for respondent's software before petitioner's and (2) the online encyclopedia Wikipedia that has an entry for respondent's mark but not petitioner's. This is hardly evidence of actual confusion. The fact that the author of a reference work chose to list only respondent's software under "Condor" does not establish that there is a likelihood of confusion. Also, internet searches would be expected to produce mixed results if the search consisted of a mark common to both parties and the ubiquitous term "software." If this was evidence of confusion, it would establish that

16

there was a per se rule that all software was related. This is a point, as we indicated earlier, the board has along ago repudiated. *See also M2 Software*, 78 USPQ2d at 1948 ("Although both parties operate websites, that fact, without more, is insufficient to overcome the vast weight of evidence establishing that no overlap exists").

Respondent, on the other hand, argues that "the absence of evidence of actual confusion in this case weighs heavily in the University of Wisconsin's favor." Brief at 40. We disagree. The absence of actual confusion does not mean there is no likelihood of confusion. *Giant Food, Inc. v. Nation's Foodservice, Inc.*, 710 F.2d 1565, 218 USPQ 390, 396 (Fed. Cir. 1983). Even evidence of a long period of simultaneous use without actual confusion is not necessarily persuasive to conclude that there is no likelihood of confusion. *Tiffany and Co. v. National Gypsum Co.*, 459 F.2d 527, 173 USPQ 793, 794-95 (CCPA 1972) (The "board relied on the lack of evidence of actual confusion during some nineteen years of contemporaneous use. However, the record shows that both appellant and appellee have been expanding their operations under the mark over the years. Thus the probability of confusion stemming from continued simultaneous use is likely to increase, not decrease, in years to come, and Tiffany & Co., as the prior user of the mark, is entitled to continue using it as it expands and to

be protected from the ever-increasing probability that
actual confusion will arise"). Here, the parties current
marketing practices are relatively limited. Tannebaum dep.
at 10 ("We don't do any advertising with Condor") and Miller
dep. at 19 (Petitioner's witness estimated it spent
approximately $65,000, which consisted of attending trade
shows, and printing brochures and marketing materials).
Particularly in a case like this, when neither party has
conducted a large scale, public marketing campaign where
potential purchasers are likely to have been exposed to both
marks, the lack of evidence of actual confusion is not as
significant. We cannot assume that both parties will
continue to operate in such a limited manner. Indeed,
respondent itself reports that it has been expanding its
operations and thus making the chances of confusion
occurring more likely. *See* Brief at 48-49 discussing
respondent's expansion.

    Finally, in a cancellation proceeding, we note that "a
presumption of validity attaches to a service mark
registration, and the party seeking cancellation must rebut
this presumption by a preponderance of the evidence." *West
Florida Seafood Inc. v. Jet Restaurants Inc.*, 31 F.3d 1122,
31 USPQ 1660, 1662 (Fed. Cir. 1994). *See also Cerveceria
Centroamericana S.A. v. Cerveceria India Inc.*, 892 F.2d
1021, 13 USPQ2d 1307, 1309 (Fed. Cir. 1989) ("[I]n a

18

**Cancellation No. 92042881**

[trademark registration] cancellation for abandonment, as
for any other ground, the petitioner bears the burden of
proof.  Moreover, the petitioner's burden is to establish
the case for cancellation by a preponderance of the
evidence").  We hold that petitioner has met its burden.
Here, the marks are identical in every aspect.  In such
cases, "even when goods or services are not competitive or
intrinsically related, the use of identical marks can lead
to an assumption that there is a common source."  *In re
Shell Oil Co.*, 992 F.2d 1204, 26 USPQ2d 1687, 1689 (Fed.
Cir. 1993).  *See also Amcor, Inc. v. Amcor Industries, Inc.*,
210 USPQ 70, 78 (TTAB 1981) (When both parties are using
identical marks, "the relationship between the goods on
which the parties use their marks need not be as great or as
close as in the situation where the marks are not identical
or strikingly similar").  In addition, the parties' software
performs similar functions and, therefore, we cannot find
that they are used in unrelated fields.  Even sophisticated
purchasers would likely believe that there is some
relationship or association between the sources of the goods
under these circumstances.  Based on the record, we conclude
that there is a likelihood of confusion in this case.

Laches

Lastly, respondent argues (Brief at 47) that:

Petitioner had constructive notice of the University of
Wisconsin's registration as of the date of the

19

Cancellation No. 92042881

> registration … However, Petitioner did not assert its
> rights against the University of Wisconsin until filing
> this cancellation proceeding in January 6, 2004.  The
> length of Petitioner's delay was over 1000 days or 34
> months.  Petitioner's unexplained inaction constitutes
> undue delay.

"To prevail on its affirmative defense [laches],

Bridgestone was required to establish that there was undue

or unreasonable delay by the Automobile Club in asserting

its rights, and prejudice to Bridgestone resulting from the

delay." *Bridgestone/Firestone Research Inc. v. Automobile

Club de l'Ouest de la France*, 245 F.3d 1359, 58 USPQ2d 1460,

1462 (Fed. Cir. 2001).  Furthermore, a "petitioner must be

shown to have had actual knowledge or constructive notice of

a registrant's trademark use to establish a date of notice

from which a delay of laches can be measured." *Teledyne

Technologies Inc. v. Western Skyways Inc.*, 78 USPQ2d 1203,

1209 (TTAB 2006), *aff'd*, slip op., 2006 WL 3513774 (Fed.

Cir. Dec. 6, 2006)).  In this case, there is no evidence

that petitioner had actual knowledge of respondent's use of

its mark at the time the mark was published for opposition

so we measure the period of delay as of the issuance of the

registration, March 13, 2001, a period of almost 34 months.[3]

*Id.* at 1210.

---

[3] It is unclear when petitioner had actual knowledge of
respondent's use of the mark CONDOR. Mr. Hoschett testified (p.
31) on April 19, 2006, that he "personally became aware when one
of my staff advised me that there was a trademark issue.  Q. When
was that"  A. A year or two ago."  However, the petition to
cancel was filed on January 6, 2004.  Petitioner's other witness

Cancellation No. 92042881

On its face, the facts of this case are somewhat
similar to the facts of the *Teledyne* case in which the
petitioner delayed approximately 44 months and it failed to
address the laches with specificity in its brief.

> Petitioner is conspicuously silent regarding its
> reasons for the delay.  See J.T. McCarthy, McCarthy on
> Trademarks and Unfair Competition, supra at §31:14
> ["The trademark owner is usually expected to give some
> reason for delay which appears to cause prejudice.  It
> is dangerous to simply stand mute and take the position
> that there is no obligation to explain apparent
> lethargy."].  Rather than squarely addressing the
> laches defense in either its main brief or reply brief,
> petitioner merely takes the tack that laches does not
> apply due to the inevitability of confusion.
> Petitioner's complete silence on the reason for its
> delay in taking action is very problematic for its
> position.  See *Procter & Gamble Co. v. J.L. Prescott
> Co.*, 102 F.2d 773, 40 USPQ 434, 442 (3d Cir. 1939),
> cert. denied, 308 U.S. 557 (1939) [that delay was
> unexplained "must weigh heavily in the balance against
> it"].

*Teledyne*, 78 USPQ2d at 1211.

Respondent has also offered the following argument and
evidence (Brief at 48-49, citations to record omitted) to
show that it has been prejudiced by this delay:

> The growth in annual downloads of the University of
> Wisconsin's software has significantly increased.  In
> 2000, the year before it obtained its federal
> registration in Condor, the University of Wisconsin
> provided 3,738 downloads of its software.  The number
> of downloads increased to 15,155 in 2004, an increase
> if over 400 percent.  The University of Wisconsin has
> also experienced a continuation and expansion of grant
> funding, and a corresponding investment in the Condor
> project, during delay period.  Similarly, the
> University of Wisconsin's Condor project has

---

testified that: "I believe that was October of 2003" when he
first became aware of respondent's use of the CONDOR mark.
Miller dep. at 11.

21

experienced significant growth in attendance to its
user conferences during Petitioner's delay period.  For
example, the first Condor week offered by the
University of Wisconsin attracted about 20 participants
and lasted one day.  Since then, the Condor week has
grown into a four day event attracting more than 150
participants.

More generally, respondent's software has been
distributed without charge for many years and it has been
incorporated into the computer systems of many users.

Ultimately, we must conclude that there is no laches in
this case.  First, we note that the period of delay is only
34 months.  *See, e.g., Plymouth Cordage Co. v. Solar
Nitrogen Chemicals, Inc.*, 152 USPQ 202, 204 (TTAB 1966)
(Delay of "slightly less than a three year delay" held not
to be laches).  Furthermore, while respondent refers to
petitioner's "unexplained inaction" (Brief at 47),
petitioner's witnesses have testified that petitioner was
not aware of respondent's registration until shortly before
it filed the petition to cancel.  Therefore, "petitioner can
only be chargeable with constructive notice."  *Id.  Compare
Teledyne*, 78 USPQ2d at 1211 ("We find that petitioner's
delay of over three and one-half years, and the complete
absence of any reasonable excuse for its inaction,
constitutes undue delay prior to filing the petition for
cancellation").  Here, while petitioner has not offered an
explanation by way of an argument in its reply brief, its
witnesses' testimony about not discovering respondent's mark

**Cancellation No. 92042881**

until shortly before it filed its petition to cancel would

explain why it did not act earlier. Also, because of the

relatively limited use of respondent's mark, this lack of

actual knowledge is not surprising. *Compare*

*Bridgestone/Firestone Research*, 58 USPQ2d at 1463:

> All of these events, including constructive notice,
> widespread commercial use (knowledge of which is not
> denied by the Automobile Club), and the passing of
> twenty-seven years after registration, accompanied by
> the absence of a reasonable excuse by the Automobile
> Club for its inaction, require that the Automobile Club
> be charged with undue delay in seeking cancellation of
> Bridgestone's trademark registration.

Under the facts of this case, we hold that, even if

respondent has been prejudiced by petitioner's delay,

respondent has not shown that laches prevents petitioner

from bringing this petition to cancel.

Decision:  The petition to cancel is granted.

23

§JS 44 (Rev. 11/04,
WIWD 12/06)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Board of Regents of the University of Wisconsin System | Phoenix Software International, Inc. |

**(b)** County of Residence of First Listed Plaintiff  Dane
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant *
(IN U.S. PLAINTIFF CASES ONLY)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Assistant Attorney General William H. Ramsey
Wisconsin Department of Justice
P.O. Box 7857
Madison, WI  53707-7857
608-266-7477

Attorneys (If Known)

Attorney Rachel Blue
Doerner, Saunders, Daniel & Anderson, LLP
320 South Boston Ave., Suite 500
Tulsa, OK  74103-3725

07 C 0665 C

* Note: in land condemnation cases, use the location of the land involved.

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

- [ ] 1  U.S. Government Plaintiff
- [X] 3  Federal Question (U.S. Government Not a Party)
- [ ] 2  U.S. Government Defendant
- [ ] 4  Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**(Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

Does this case challenge the constitutionality of a state statute (nature of suit 950) or a federal statute pursuant to Fed. R. Civ. P. 5.1?  [ ] Yes  [X] No
Note: The filing party is responsible for serving notice of a constitutional question on the State Attorney General if a state statute is challenged, or on the U.S. Attorney General if a federal statute is challenged, either by certified or registered mail or by sending it to an electronic address designated by the attorney general for that purpose.

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 610 Agriculture | [ ] 422 Appeal 28 USC 158 | [ ] 400 State Reapportionment |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 362 Personal Injury - Med. Malpractice | [ ] 620 Other Food & Drug | [ ] 423 Withdrawal 28 USC 157 | [ ] 410 Antitrust |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 365 Personal Injury - Product Liability | [ ] 625 Drug Related Seizure of Property 21 USC 881 | | [ ] 430 Banks and Banking |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | [ ] 368 Asbestos Personal Injury Product Liability | [ ] 630 Liquor Laws | **PROPERTY RIGHTS** | [ ] 450 Commerce |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | | [ ] 640 R.R. & Truck | [ ] 820 Copyrights | [ ] 460 Deportation |
| [ ] 151 Medicare Act | [ ] 340 Marine | **PERSONAL PROPERTY** | [ ] 650 Airline Regs. | [ ] 830 Patent | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 152 Recovery of Defaulted Student Loans (Excl. Veterans) | [ ] 345 Marine Product Liability | [ ] 370 Other Fraud | [ ] 660 Occupational Safety/Health | [X] 840 Trademark | [ ] 480 Consumer Credit |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 371 Truth in Lending | [ ] 690 Other | **SOCIAL SECURITY** | [ ] 490 Cable/Sat TV |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 380 Other Personal Property Damage | **LABOR** | [ ] 861 HIA (1395ff) | [ ] 810 Selective Service |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 385 Property Damage Product Liability | [ ] 710 Fair Labor Standards Act | [ ] 862 Black Lung (923) | [ ] 850 Securities/Commodities/Exchange |
| [ ] 195 Contract Product Liability | | | [ ] 720 Labor/Mgmt. Relations | [ ] 863 DIWC/DIWW (405(g)) | [ ] 875 Customer Challenge 12 USC 3410 |
| [ ] 196 Franchise | | | [ ] 730 Labor/Mgmt. Reporting & Disclosure Act | [ ] 864 SSID Title XVI | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 740 Railway Labor Act | [ ] 865 RSI (405(g)) | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [ ] 441 Voting | [ ] 510 Motions to Vacate Sentence | [ ] 790 Other Labor Litigation | **FEDERAL TAX SUITS** | [ ] 892 Economic Stabilization Act |
| [ ] 220 Foreclosure | [ ] 442 Employment | **Habeas Corpus:** | [ ] 791 Empl. Ret. Inc. Security Act | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 893 Environmental Matters |
| [ ] 230 Rent Lease & Ejectment | [ ] 443 Housing/Accommodations | [ ] 530 General | | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 894 Energy Allocation Act |
| [ ] 240 Torts to Land | [ ] 444 Welfare | [ ] 535 Death Penalty | | | [ ] 895 Freedom of Information Act |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 540 Mandamus & Other | | | [ ] 900Appeal of Fee Under Equal Access to Justice |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | [ ] 550 Civil Rights | | | [ ] 950 Constitutionality of State Statutes |
| | [ ] 440 Other Civil Rights | [ ] 555 Prison Condition | | | |

**V. ORIGIN**  (Place an "X" in One Box Only)

- [X] 1  Original Proceeding
- [ ] 2  Removed from State Court
- [ ] 3  Remanded from Appellate Court
- [ ] 4  Reinstated or Reopened
- [ ] 5  Transferred from another district (specify)
- [ ] 6  Multidistrict Litigation
- [ ] 7  Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing **(Do not cite jurisdictional statutes unless diversity)**: 15 U.S.C. sec. 1071(b)

Brief description of cause:  Trademark cancellation action

**VII. REQUESTED IN COMPLAINT:**
[ ] CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
**JURY DEMAND:**  [X] Yes  [ ] No

**VIII. RELATED CASE(S) IF ANY**
(See instructions):
JUDGE                                    DOCKET NUMBER

DATE  11/26/07

SIGNATURE OF ATTORNEY OF RECORD  Wm. H. Ramsey

FOR OFFICE USE ONLY

RECEIPT #            AMOUNT            APPLYING IFP            JUDGE            MAG. JUDGE