IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

BOARD OF REGENTS OF THE
UNIVERSITY OF WISCONSIN SYSTEM,

                         Plaintiff,

    v.

PHOENIX SOFTWARE
INTERNATIONAL, INC.

                         Defendant.

OPINION and ORDER

07-cv-665-bbc

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

       Plaintiff Board of Regents of the University of Wisconsin System filed this civil action seeking review of a decision of the Trademark Trial and Appeal Board in which the board cancelled a trademark of plaintiff's for "CONDOR." Defendant Phoenix Software International, Inc. filed counterclaims against plaintiff for trademark infringement related to plaintiff's use of its CONDOR mark. Now before the court is plaintiff's motion to dismiss defendant's federal counterclaims on the ground of immunity. (Although defendant asserted related state law claims, those claims have been dismissed with prejudice pursuant to the parties' stipulation. Dkt. #18.)

       Plaintiff contends that it is immune from suit under the Eleventh Amendment

because it is a branch of the state. Defendant contends that plaintiff has no sovereign immunity in this case both because Congress has abrogated the state's immunity from trademark infringement suits in the Trademark Remedy Clarification Act and because plaintiff waived its immunity by participating in the federal trademark system and by filing its present complaint.

Defendant's counterclaims must be dismissed. None of plaintiff's arguments are reasons for reaching any conclusions other than that plaintiff enjoys sovereign immunity as a branch of the state and that its immunity has been neither abrogated nor waived. First, Congress did not abrogate state sovereign immunity for violation of trademark rights by enacting the Trademark Remedy Clarification Act. Although the Supreme Court has not held that Congress acted unconstitutionally when it tried to abrogate state sovereign immunity with respect to trademark suits, the Court has found that Congress had no authority to abrogate state sovereign immunity with respect to patent suits. <u>Florida Prepaid PostSecondary Education Expense Board v. College Savings Bank</u>, 527 U.S. 627 (1999). It is unlikely the Court would reach a different conclusion in trademark litigation. Second, plaintiff did not waive its sovereign immunity by participating in the federal trademark system because its participation was not conditioned on waiver. Third, plaintiff did not waive its immunity by filing the present suit appealing cancellation of its mark because its appeal is not a voluntary invocation of federal jurisdiction.

2

OPINION

At issue are defendant two counterclaims asserted by defendants for violation of federal trademark rights: trademark infringement under 15 U.S.C. § 1114 and false designation of origin under 15 U.S.C. §1125. If as plaintiff maintains, it enjoys sovereign immunity from trademark infringement suits, these counterclaims must be dismissed. The Eleventh Amendment prohibits suits against the state or its agencies by citizens of another state or by the state's own citizens for monetary damages or equitable relief. College Savings Bank v. Florida Prepaid Postsecondary Education Expense Board, 527 U.S. 666, 670 (1999); Pennhurst v. State School and Hospital v. Halderman, 465 U.S. 89, 100 (1984). The state's sovereign immunity can be limited in only two circumstances: (1) when Congress abrogates the state's immunity pursuant to a valid exercise of power, Tennessee v. Lane, 541 U.S. 509, 533-34 (2004); or (2) when the state makes an express and voluntary waiver of the immunity. Clark v. Barnard, 108 U.S. 436, 447-448 (1883).

Defendant does not dispute that plaintiff is an "arm of the state" and therefore enjoys Eleventh Amendment immunity generally (as the Court of Appeals for the Seventh Circuit has held in a number of cases, including Joseph v. Board of Regents of University of Wisconsin System, 432 F.3d 746, 748 (7th Cir. 2005)). Defendant's argument is that the Eleventh Amendment does not apply because the state's immunity from lawsuits asserting a violation of trademark rights has been both abrogated and waived.

A. Congressional Abrogation

Defendant's first argument raises questions about the effect of Congress's attempt to abrogate the state's sovereign immunity from suits for violation of trademark rights by enacting the Trademark Remedy Clarification Act. This Act added several provisions to the trademark statutes to make it clear that Congress wished to abrogate state immunity from trademark infringement suits. The principal provision proposing abrogation states:

> Any State, instrumentality of a State or any officer or employee of a State or instrumentality of a State acting in his or her official capacity, shall not be immune, under the eleventh amendment of the Constitution of the United States or under any other doctrine of sovereign immunity, from suit in Federal court by any person, including any governmental or nongovernmental entity for any violation under this chapter [including violations of 15 U.S.C. §§ 1114 and 1125].

15 U.S.C. § 1122(b).

Congress may abrogate the state's sovereign immunity only if it (a) makes an "unequivocal expression" of its intent to abrogate the immunity and (b) acts "pursuant to a valid exercise of power." Florida Prepaid, 527 U.S. at 635. Without a doubt, § 1122(b) is an "unequivocal expression" of Congress's intent to abrogate immunity. The only question is whether Congress was exercising a valid power when it enacted the Trademark Remedy Clarification Act.

Congress purported to pass the Trademark Remedy Clarification Act pursuant to its powers under the commerce clause and the Fourteenth Amendment. S. Rep. No. 102-280,

4

at 8, as reprinted in 1992 U.S.C.C.A.N. 3087, 3094.  However, the Supreme Court has held that Congress may not abrogate immunity pursuant to the commerce clause or any other of its Article I powers, meaning that the justification for this act must be found in the Fourteenth Amendment.  Florida Prepaid, 527 U.S. at 636 (citing Seminole Tribe, 517 U.S. 44, 72-73 (1996)).  Under § 5 of the Fourteenth Amendment, Congress has the power to "enforce" the substantive provisions of the Fourteenth Amendment, such as the due process clause; to this extent, § 5 includes a limited power to abrogate the states' sovereign immunity.  Id.  In the Trademark Remedy Clarification Act, Congress asserts its § 5 "enforcement" powers to address state violations of the due process clause that may occur when a state "deprives" persons of property by infringing their trademark rights.

The scope of Congress's power to abrogate under the § 5 of the Fourteenth Amendment is far from settled.  United States v. Georgia, 546 U.S. 151, 158 (2006).  The general test is whether the abrogation is "congruent and proportional" with a Fourteenth Amendment injury that Congress seeks to remedy or prevent.  Florida Prepaid, 527 U.S. at 639 (quoting City of Boerne v. Flores, 521 U.S. 507, 519-20 (1997)).  To meet this standard, Congress must "identify conduct transgressing the Fourteenth Amendment's substantive provisions, and must tailor its legislative scheme to remedying or preventing such conduct."  Id.

In Florida Prepaid, the Court considered whether Congress had acted with congruence

and proportionality in enacting the Patent and Plant Variety Protection Remedy Clarification Act, which purported to abrogate state immunity to patent suit pursuant to § 5 of the Fourteenth Amendment.  Id. at 640-47.  In determining whether Congress had identified constitutional violations by the states, the Court emphasized that the patent infringement by a state was not itself a constitutional "injury"; only state patent infringement that is both without due process of law and intentional or reckless could amount to the sort of "injury" that Congress may seek to remedy or prevent pursuant to § 5.  Id. at 642-43, 645.  Turning to the legislative history, the Court found that Congress "identified no pattern of patent infringement by the States," id. at 640, and "barely considered the availability of state remedies, making only "fleeting references" to the remedies in the House Report.  Id. at 643-44.  Despite the lack of findings, the Court found, Congress sought to expose the state to "expansive liability" for direct, induced or contributory patent infringement, negligent or intentional, without regard to whether a state offered an adequate state-court remedy for its patent infringement.  Id. at 645, 646-47.  Abrogation in these circumstances was disproportionate to the injury identified by Congress, which was nothing more than a "handful of instances of state patent infringement that do not necessarily violate the Constitution."  Id. at 645-46.

The Trademark Remedy Clarification Act contains the same scant record as the Patent Act at issue in Florida Prepaid.  (Indeed, the two acts shared the same Senate Report,

S. Rep. No. 102-280.)  The Senate Report points to a single case of state trademark infringement, Woelffer v. Happy States of America, 626 F. Supp. 499 (N.D. Ill. 1985), in which the state was protected from federal suit (injunctive relief against state officials was available, but no monetary relief or attorney fees were available).  S. Rep. No. 102-280, at 6.  The report's authors make a couple of conclusory statements about the availability of state remedies for trademark violations:  "State and common law" remedies are "limited in scope and inconsistent to such an extent that they serve as a meaningless substitute for Federal remedies" and "are less than adequate substitutes for Federal provisions."  Id. at 6-7.  As for the scope of abrogation, Congress made no special provisions to limit the liability of the state for violations of trademark rights when a state is merely negligent or when it provides adequate state remedies to satisfy due process requirements.  The Court found it telling that in S. Rep. 102-280, Congress relied heavily on concerns relevant to the commerce clause (such as the need for uniformity) to justify its attempt to abrogate state immunity; Fourteenth Amendment concerns were no more than an afterthought.   Florida Prepaid, 527 U.S. at 645.  After Seminole Tribe, 517 U.S. 44, and City of Boerne, 521 U.S. 507, such justifications are plainly inadequate.

 Perhaps recognizing that the Congressional record cannot support the attempt to abrogate in the Trademark Remedy Clarification Act, defendant does not discuss the record. Instead, it points out that trademarks and patents are different kinds of property and

7

suggests that the focus in trademark law on the "consuming public" makes the act's broad abrogation of immunity "proportionate." Defendant fails to explain how the "consuming public" might have a property right in trademarks. Even if it did have such a right, how does defendant's suggestion make *due process* violations of those rights any more prevalent or the abrogation any more measured? Defendant does not explain, perhaps because it has no good answer.

Next, defendant argues that, because Florida Prepaid is not exactly on point (because it involved a different property right), the court should afford the Trademark Remedy Clarification Act a "presumption of constitutionality" and decline to rule it unconstitutional because it "has not yet been decided." Dft.'s Br., Dkt. #15, at 5-6. If I understand defendant, it is arguing two things: (1) that a state must prove the lack of "congruence and proportionality" of a statute proposing to abrogate state sovereign immunity and (2) that lower courts such as this one should presume that the abrogation is valid until the Supreme Court says otherwise. Neither argument is persuasive. When Congress wishes to abrogate state immunity under § 5, it is required to identify a constitutional injury that it seeks to prevent or remedy and tailor its abrogation accordingly. Florida Prepaid, 527 U.S. at 635, 639. In this setting, a state seeking immunity from suit need only point to Congress's attempt to abrogate and explain its shortcomings. Plaintiff has done this. The fact that the Supreme Court has not addressed this issue of constitutional law does not mean that this

court can or should ignore it. The constitutionality of the statute is squarely before me, so I must decide it.

Because defendant has failed to show that the Trademark Remedy Clarification Act is congruent and proportional to any Fourteenth Amendment injury, I conclude that the Act was not passed "pursuant to a valid exercise of power" and that it fails to abrogate state immunity. As a branch of the state, plaintiff enjoys sovereign immunity from trademark infringement suits.

### B. Waiver

The next question is whether plaintiff has waived its immunity, either by participating in the federal trademark system or by filing the present suit to review cancellation of its mark. A state may waive immunity by either making a "clear declaration" that it intends to submit itself to federal jurisdiction or by voluntarily invoking federal jurisdiction. College Savings Bank, 527 U.S. at 675-76 (citations omitted).

1. Plaintiff's participation in federal trademark system

As the Court explained in Colllege Savings Bank, 527 U.S. at 686, a state may "constructively waive" immunity when Congress conditions a "gift" on the waiver, such as when Congress conditions approval of an interstate compact on "suability" or when Congress

9

conditions a grant of funds to the States upon waiver of immunity. However, constructive waiver does not apply where Congress attempts to "condition" otherwise permissible behavior such as market participation on waiver of immunity. Id. at 683-84. Attempts to force waiver on the sole basis of participation in the market amounts to nothing more than "abrogation under another name." Id.

The Trademark Remedy Clarification Act does not "condition" the receipt of a federal trademark on a waiver of sovereign immunity. The Act seeks to expose *all* states to liability, regardless of their participation in the federal trademark system. 15 U.S.C. § 1122(b) ("*Any* State . . . shall not be immune . . . for any violation under this chapter.") In College Savings, 527 U.S. at 687, the Court addressed this very issue and held that "what Congress threatens [in § 1122] if the State refuses to agree to its condition is not the denial of a gift or gratuity, but a sanction: exclusion of the State from otherwise permissible activity." Id. at 687. Such an attempt amounts to nothing more than "abrogation under another name" and cannot constitute a waiver. Id. at 684.

2. Plaintiff's appeal of cancellation in federal court

The next question is whether plaintiff waived its immunity by filing its present complaint, in which it appeals the decision of the Trademark Trial and Appeal Board's decision to cancel plaintiff's mark. As a general rule, a state waives Eleventh Amendment

immunity by filing suit or otherwise invoking federal jurisdiction. Lapides v. Board of Regents of University System of Georgia, 535 U.S. 613, 619 (2002) (citations omitted). However, the invocation of federal jurisdiction must be *voluntary*, id., and the waiver reaches only so far as necessary to adjudicate the claim raised by the state. In re Friendship Medical Center, Ltd., 710 F.2d 1297, 1301 (7th Cir. 1983). Plaintiff's present complaint is not "voluntary," but even if it were, plaintiff would not have waived immunity to defendant's counterclaims because they are not "necessary" to adjudicating plaintiff's appeal.

a. Voluntariness of appeal

A court should consider the "litigation act" taken by the state to determine whether it amounts to a voluntary invocation of federal jurisdiction. Lapides, 535 U.S. at 620. A state may waive Eleventh Amendment immunity by filing a new lawsuit, seeking federal administrative adjudication, Vas-Cath, Inc. v. Curators of University of Missouri, 473 F.3d 1376, 1383 (Fed. Cir. 2007), intervening in federal court, Clark v. Barnard, 108 U.S. 436, 447 (1883), or removing a state case to federal court, Lapides, 535 U.S. at 620. However, a state does not waive immunity simply by contesting unfavorable decisions in suits brought against it. State Contracting & Engineering Corp. v. State of Florida, 258 F.3d 1329, 1336 (Fed. Cir. 2001) (citing Florida Department of State v. Treasure Salvors, Inc., 458 U.S. 670, 683 n. 18 (1982)).

11

In the context of administrative appeals in federal courts, the question of "voluntariness" depends on the state's role during the administrative proceedings. Vas-Cath, 473 F.3d at 1383. When a state initiates administrative proceedings or uses them as a litigation tool, waiver of immunity may be proper regardless who appeals the administrative decision to a federal court. Vas-Cath, 473 F.3d at 1381-82. At the same time, a state simply *defending* its cause in administrative proceedings brought against it does not waive immunity by appealing the result of the proceedings. Id. at 1383 (distinguishing Xechem International, Inc. v. University of Texas M.D. Anderson Cancer Center, 382 F.3d 1324, 1331 (Fed. Cir. 2004), in which no waiver was found because defendant "did not request the adjudication, did not initiate and participate in a PTO adversarial proceeding, did not engage in litigation-like conduct" and did not use proceeding to obtain property of losing party). Defendant has admitted that *it* filed the petition to cancel plaintiff's registration for the mark CONDOR, Ans., dkt. #4, ¶ 12, that led ultimately to cancellation of the mark by the Trademark Trial and Appeal Board. Plaintiff's role has been limited to defending its mark from cancellation, and now appealing the adverse decision of the board pursuant to 15 U.S.C. § 1071(b). There is nothing "voluntary" about this appeal.

Defendant points out that plaintiff could have sought an appeal in the Court of Appeals for the Federal Circuit under a more deferential standard, pursuant to 15 U.S.C. § 1071(a), but instead "chose" this forum for de novo review, which allows submission of new

12

evidence. Plaintiff's choice of one federal forum over another does not make the appeal any more voluntary. The fact that this forum allows additional relief and new evidence is irrelevant; presumably, plaintiff would not be seeking review at all if cancellation proceedings had not been initiated against it.

b. Scope of waiver

Even if plaintiff's appeal of cancellation could be said to "invoke" federal jurisdiction, its waiver would reach only so far as necessary to adjudicate the claim invoking jurisdiction, "such as considering the objections of other parties to the claim." Friendship Medical Center, 710 F.2d at 1301 (citations omitted). Defendant proposes that I apply the liberal "logical relationship" test in Fed. R. Civ. P. 13(a) to determine what claims are "necessary" to adjudicate the claim. Although I have my doubts about applying a standard aimed at "judicial economy" to sovereign immunity concerns, In re Price, 42 F.3d 1068, 1073 (7th Cir. 1994), I need not consider defendant's invitation. Even applying defendant's standard, plaintiff's appeal would not effect a waiver of plaintiff's immunity to defendant's counterclaims. The parties' respective claims are too distinct: plaintiff's complaint is one for appeal of cancellation of *plaintiff's* mark, while defendant's counterclaims are claims asserting infringement of *defendant's* mark. Plaintiff's case involves determining the validity of plaintiff's registered "CONDOR" mark; defendant's case involves determining, among other

13

things, whether plaintiff's use of the term "CONDOR" is likely to deceive or cause confusion or mistake or divert customers away from defendant, which has its own registered "CONDOR" mark.  Although it might be nominally convenient to address these issues in a single case, the legal and factual issues barely overlap: the term "CONDOR" seems to be about all that ties the two together.  Therefore, even if plaintiff could be said to have waived its sovereign immunity by filing an appeal of cancellation of its mark, defendant's counterclaim does not fall within the scope of that waiver.

Because I conclude that plaintiff's sovereign immunity from trademark infringement suits has been neither waived nor abrogated, plaintiff's motion to dismiss will be granted.


ORDER

IT IS ORDERED that Plaintiff Board of Regents of the University of Wisconsin System's motion to dismiss defendant Phoenix Software International, Inc.'s federal counterclaims (dkt. #12) is GRANTED; the counterclaims are DISMISSED on the ground that plaintiff enjoys sovereign immunity.

Entered this 15th day of July, 2008.

BY THE COURT:
/s/
_____
BARBARA B. CRABB
District Judge